# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RAINA MARIE ARMSTRONG,

        Plaintiff,

                                **Case No. 2:18-cv-1002**

   v.

                                **Chief Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## OPINION AND ORDER

Plaintiff, Raina Marie Armstrong, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. This matter is before the Court for disposition based upon the parties' full consent (ECF No. 11), 28 U.S.C. § 636(c), for consideration of Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 10). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

In January and March 2015, Plaintiff filed applications for supplemental security income and disability insurance benefits, respectively alleging that she had been disabled since January 2, 2003 (R. at 71, 207–19.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 70–124.) Plaintiff sought a *de novo* hearing before an administrative law

judge.  (R. at 155–56.)  Administrative Law Judge Matthew Winfrey ("ALJ") held a hearing on

October 12, 2017, at which Plaintiff, who was represented by counsel, appeared and testified.

(R. at 32–67.)  On January 30, 2018 the ALJ issued a decision finding that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 17–27.)  On July 3, 2018, the

Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the

Commissioner's final decision.  (R. at 1–5.)  Plaintiff then timely commenced the instant action.

## II.     RELEVANT HEARING TESTIMONY

Connie O'Brien testified as a vocational expert ("VE") at the October 12, 2017,

administrative hearing.  (R. at 58–64.)  The VE testified that Plaintiff's past relevant work

included order picker, a medium exertion level position, and warehouse checker, a light

exertion level position.  (R. at 58–59.)  The VE testified that a hypothetical person of Plaintiff's

age, education, and work experience, with the ALJ's assessed RFC, could perform work as an

inspector (DOT No. 669.687-014), patcher (DOT No. 723.687-010), and assembler (DOT No.

713.687-018).  (R. at 63.)   According to the VE, there would be no available work if the

hypothetical individual were limited to virtually no extension, flexion, or rotation of the neck.

(R. at 64.)

## III.     RELEVANT MEDICAL RECORDS

### A.     Lisa Thornton, Ph.D.

On May 13, 2015, Plaintiff underwent a psychological consultative examination

conducted by Lisa Thornton, Ph.D.  (R. at 478–83.)  In response to what prevents her from

working, Plaintiff responded her back and neck and the fact that she has not wanted to leave the

house since her husband died two years ago.  (R. at 478.)  Plaintiff reported that she was not

currently receiving any mental health treatment and had never been in counseling or hospitalized

for mental illness. (R. at 479.) Other than once receiving valium at a hospital, she has not been medicated for mental illness. (*Id*.) Upon examination, Dr. Thornton noted that Plaintiff, who drove herself to the appointment, was appropriately dressed and groomed with unremarkable eye contact. (*Id*.) Throughout the evaluation, Plaintiff was alert, attentive, and cooperative. (*Id*.) Plaintiff's rate, rhythm, and volume of speech were unremarkable. (R. at 480.) There was no evidence of obsessions, delusions, or ruminations. (*Id*.) Dr. Thornton noted that Plaintiff's speech was mostly goal directed but sometimes circumstantial, requiring occasional redirection to the interview questions. (*Id*.) Plaintiff described her concentration and clarity of thought as "I feel overwhelmed. I have trouble keeping paperwork together." (*Id*.) Dr. Thornton noted an anxious, but stable, affect and signs of apprehension. (*Id*.) Plaintiff reported episodes of anxiety and panic during which she feels overwhelmed. (*Id*.) She identified triggers as concerns over paperwork, bills, or dangers to herself or her daughter, stating further that she worries constantly and finds it difficult to control the worry. (*Id*.) Dr. Thornton noted that there was no indication of auditory or visual hallucinations, that Plaintiff was oriented times four, and her insight and judgment appeared to be intact. (*Id*.)

Plaintiff reported that she made her daughter's breakfast, got her ready for school, and takes her to the bus stop. (R. at 480–81.) She tries to do housework but feels overwhelmed. (R. at 481.) While the house is not as clean as she would like, it is not dirty or cluttered. (*Id*.) She goes over to her mother's house and some friends' houses to visit. (*Id*.) She spends time with the television on but her mind wanders "to every possible thing that could go wrong next." (*Id*.) She is able to cook food and does her own errands. (*Id*.) Plaintiff drives to Aldi or the dollar store because it is closer than the grocery, stating that she does not like crowds anymore. (*Id*.) Plaintiff keeps track of her own schedule by writing it down. (*Id*.) Plaintiff stated that she gets

overwhelmed trying to manage money, but despite this difficulty, Dr. Thornton noted that

Plaintiff appeared to have the judgment and cognitive capability to manage any funds granted.

(*Id.*)

Dr. Thornton provided the following functional assessment:

***Abilities and limitations in understanding, remembering, and carrying out instructions***

Based on the claimant's self-reported educational history and presentation during this evaluation, intellect is estimated to be in the average range. She does not report a history of difficulty learning or understanding her tasks at work. She was able to understand and follow instructions in today's evaluation.

***Abilities and limitations in maintaining attention and concentration, and in maintaining persistence and pace, to perform simple tasks and to perform multi-step tasks***

The claimant reports difficulties with persistence at home. Her anxiety causes her to switch from one task to another. In today's evaluation some redirection was necessary during the interview due to circumstantial speech. Otherwise she tracked conversation relevantly. She occasionally forgot what she was talking about. She may have some difficulties maintaining persistence at work because of her worrying.

***Abilities and limitations in responding appropriately to supervision and to coworkers in a work setting***
The claimant does not report a history of interpersonal difficulties in the workplace. She is reporting some interpersonal withdrawal currently. However, she continues to have intact relationships with family members and friends. In today's evaluation she was anxious but cooperative.

***Abilities and limitations in responding appropriately to work pressures in a work setting***
The claimant reports no history of psychiatric hospitalization or emergency treatment. She says there has been a gradual increase in symptoms over the last several years but no specific periods of psychological deterioration leading to an inability to function. She says she is easily overwhelmed by her household tasks and therefore may feel easily overwhelmed and have difficulty coping with the everyday stressors in a work environment. In response to the stress of
Today's evaluation, she showed anxiety and worry.

(R. at 481–82.)

**B.      Robert D. Whitehead, M.D.**

On June 25, 2015, Robert Whitehead, M.D. conducted a consultative examination of Plaintiff.  (R. at 486–89.)  Upon examination, Dr. Whitehead noted Plaintiff walked with a very slow short-strided gait but stable, nonantalgic gait.  (R. at 487.)  Plaintiff communicated without difficulty with a flat affect and good insight. (*Id.*)  Dr. Whitehead noted restricted cervical and lumber spine range of motion with significant myofascial tightness, paraspinal tenderness, trigger points in the trapezius, and slight decrease in the right Achilles deep tendon reflex.  (R. at 488.)  He also noted a positive Spurling on the right with decreased sensation of the lateral arm. (*Id.*)  Dr. Whitehead further observed normal range of motion tenderness and contour in the thoracic spine with no scoliotic changes, pigment changes or scars.  (*Id.*)  Dr. Whitehead assessed depression, spinal stenosis cervical spine, herniated disk lumbar spine, and right sided radiculopathy of the upper extremity.  (*Id.*)  Dr. Whitehead opined as follows:  "Examination today would suggest this individual would have difficulty maintaining remunerative type employment considering her coexisting depression with her cervical and lumbar pathology."  (R at 489.)

**C.      State agency review**

**1.      Psychological consultants**

On June 12, 2015, Jennifer Swain, Psy.D., a state-agency psychologist, reviewed Plaintiff's medical record.  (R. at 70–93.)  Dr. Swain concluded that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (R. at 76, 88.)  Dr. Swain noted that Dr. Thornton opined that Plaintiff "may feel easily

overwhelmed by work stressors.  However, she has never been in outpatient Y tx and has adequate ADLs.  Overall, limits appear no more than mild.  T16 not severe[.]"  (*Id*.)

On November 12, 2015, Carl Tishler, Ph.D., reviewed the medical record upon reconsideration.  (R. at 96–122.)   Dr. Tishler agreed with the limitations found by Dr. Swain.  (*Id*.)

### 2. Medical consultants

On July 20, 2015, Abraham Mikalov, M.D., a state-agency physician, reviewed Plaintiff's medical record.  (R. at 70–93.)  Dr. Mikalov concluded that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday with additional manipulative, postural, and environmental limitations.  (R. at 77–79; 89–91.)

On November 8, 2015, Leslie Green, M.D., reviewed the medical record upon reconsideration.  (R. at 96–122.)  Dr. Green agreed with the limitations found by Dr. Mikalov.  (R. at 104–06; 117–19.)

## IV. ADMINISTRATIVE DECISION

On January 30, 2018, the ALJ issued his decision.  (R. at 17–27.)  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2009.  (R. at 19.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of January 2, 2003.  (*Id*.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?

At step two, the ALJ concluded that Plaintiff had the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, anxiety, agoraphobia, depression, and bilateral osteoarthritis of the knees. (*Id.*)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally push and pull with the right upper extremity, can never reach overhead on the right; can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; never crawl; and occasionally kneel and crouch. The claimant can never be exposed to workplace hazards such as unprotected heights and moving mechanical parts and can never operate a motor vehicle. She is limited to simple, routine tasks, with no more than occasional interaction with the public and occasional changes in the workplace, and would be off task 8% of the time.

(R. at 21.) In reaching this determination, the ALJ assigned "some weight" to Dr. Thornton's opinions and "little weight" to the state agency psychological consultants. (R. at 24 –25.)

Relying on the VE's testimony, the ALJ determined that even though Plaintiff is unable to perform her past relevant work, other jobs exist in significant numbers in the national

---

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

economy that she can perform.  (R. at 25–26.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 27.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances two contentions of error. Plaintiff first asserts that the ALJ failed to adequately evaluate Plaintiff's mental health impairment, resulting in an RFC that was not supported by substantial evidence. Plaintiff next argues that the ALJ failed to adequately evaluate Plaintiff's spinal impairment, again resulting in an RFC that was unsupported by substantial evidence.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Although the ALJ must provide "good reasons" when assigning weight to a treating physician, "this explanatory requirement does not apply to opinions from physicians who" have not treated the claimant. *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). However, "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Id.* (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

The regulations state that the ALJ, regardless of a medical opinion's source, will evaluate the opinion based on the following factors: whether there was an examining relationship, whether the opinion was made by a treating source, the length of the treating relationship, the supportability of the opinion's conclusions, the consistency of the opinion with the record as a

whole, any specialization of the opinion source, and other factors raised by Plaintiff.  20 C.F.R. §

404.1527(c).  The ALJ may give the opinions of non-examining state agency doctors weight

"only insofar as they are supported by evidence in the case record."  SSR 96-6p, 1996 WL

374180 (July 2, 1996).  The ALJ is specifically directed to consider whether the State agency

doctors' opinions are supported by "evidence received at the administrative law judge . . . level[ ]

that was not before the state agency."  (*Id.*)

A.      **Evaluation of Mental Impairment**

As set forth above, the ALJ's RFC limited Plaintiff to, *inter alia*, "simple, routine tasks,

with no more than occasional interaction with the public and occasional changes in the

workplace, and would be off task 8% of the time."  (R. at 21.)  In reaching this determination, the

ALJ considered Plaintiff's mental impairments as follows:

> Turning to the claimant's mental impairments, the objective findings are not
> entirely consistent with the level of severity testified to by the claimant.  A
> November 2014 mental health screening indicated only mild depression, and it was
> proposed the claimant monitor her symptoms (Exhibit 12F/39).  In 2015 the
> claimant sought counseling and mental health treatment with complaints of anxiety.
> However, treatment records suggest the claimant's anxiety was in response to
> specific instances in the claimant's life. For example the claimant reported anxiety
> as the result of her father having a brain tumor (Exhibit 11F/145), the suicide of a
> friend (Exhibit 11F/142), getting into a motor vehicle accident and being robbed
> (Exhibit 11F/139), her daughter jumping out of a second story window (Exhibit
> 11F/137), and her neighbor threatening her (Exhibit 11F/90).  The claimant's
> treatment has consisted of counseling, community psychiatric supportive treatment,
> and medications (Exhibit 11F).  The claimant was scheduled to follow up
> approximately every 2-3 months for psychiatric care (Exhibit 11F).  Treatment
> records repeatedly indicate the claimant was open and receptive to intervention, and
> demonstrated insight and understanding, and was engaged with appropriate
> expression (Exhibit 11F/101, 104, 130, 150).  The claimant's more recent treatment
> records note the claimant was satisfied with her recent medication changes, and she
> did not report significant changes in her conditions since her last visit (Exhibit
> 11F/86).  As of June 12, 2017 the claimant was noted to be bright, appropriate,
> cooperative, pleasant and talkative (Exhibit 11F/163).

(R. at 23–24.)  The ALJ further concluded that the objective medical evidence did not support

the severity of symptoms alleged by Plaintiff:

> The claimant in this case does have underlying medically determinable impairments that could reasonably cause the type of symptomatology alleged. However, a careful review of the record does not disclose sufficient objective medical evidence to substantiate the severity of the symptoms and degree of functional limitations alleged by the claimant.  The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in symptoms of such a severity or frequency as to preclude the range of work described above.
>
> In addition to the lack of objective evidence, the other evidence of record, considering the relevant factors set forth in 20 CFR 404.1529(c) and 20 CFR 416.929(c), does not support the claimant's subjective complaints[.]
>
> In terms of the claimant's treatment, medications, and other methods used to reduce symptoms, the claimant has not generally received the type of medical treatment one would expect for an individual alleging her level of condition severity and associated physical and mental limitations.  Although the claimant has received treatment for her allegedly disabling impairments that treatment has been essentially routine and conservative in nature.  The claimant has treated her lumbar and cervical spinal impairments conservatively with medication and only three physical therapy visits, and has not undergone any surgical intervention. The claimant's mental health treatment has similarly been conservative, consisting of counseling and medication management, with no indication of any recommendations for more aggressive treatment such as inpatient psychiatric care. Notably, at the time of her consultative examination, the claimant had not sought any mental health treatment whatsoever.
>
> The undersigned has also considered the claimant's daily activities.  The claimant testified she is able to go to the store, despite her reports of panic attacks and not wanting to be in crowds.  She testified she performs chores such as laundry, vacuuming, and dusting.  The claimant visits her mom frequently and both walks and drives to visit friends.  She reported she is able to cook, do her own errands, and keep her own schedule (Exhibit 4F).  These types of activities are commensurate with the residual functional capacity above.

(R. at 24–25.)

Plaintiff challenges the ALJ's conclusion and reasoning on several grounds, which the

Court addresses in turn.

### 1.     Limitation to simple, routine tasks

Plaintiff first asserts that "'[s]imple work does not necessarily account for Plaintiff's issues with stress and anxiety." (ECF No. 13 at 10.)[2] Setting aside the ambivalence of Plaintiff's assertion, the ALJ did not limit Plaintiff to only simple work. Instead, he limited Plaintiff to "simple, routine tasks, with no more than occasional interaction with the public and occasional changes in the workplace" with being off task 8% of the time. (R. at 21.)

Plaintiff goes on to argue that an unskilled work limitation, without a more specific concentration-related limitation, constitutes error requiring remand. (ECF No. 13 at 13 (citing *Hall v. Comm'r of Soc. Sec*., No. 1:17-cv-363, 2018 WL 3524467 (S.D. Ohio July 23, 2018), *report and recommendation adopted*, No. 1:17-cv-363, 2018 WL 4031060 (S.D. Ohio Aug. 23, 2018); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005)).) Plaintiff's argument is not well taken. In *Edwards*, the ALJ and the consulting physician found that Plaintiff had a moderate limitation in her ability to concentrate, persist, and keep pace. *Edwards*, 383 F. Supp. 2d at 924–25, 930. The *Edwards* court determined that the ALJ's hypothetical question to the VE, which limited the plaintiff to "simple, unskilled, and routine work," "[w]hile

---

[2] In a footnote, Plaintiff also complains in passing that the ALJ's step three finding is "not supported by any opinions evidence" and is therefore "suspect." (*Id*. at 10–11 n.1.) Plaintiff, however, apparently does not pursue this alleged deficiency because doing so would include "excessive speculation." (*Id*.) In any event, the Court notes that Plaintiff has waived any such argument. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (stating that the United States Court of Appeals for the Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived") (citations omitted); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

close . . . [were] not sufficient, and do not fully convey" the plaintiff's limitations in concentration to the VE. *Id*. at 930–31 (finding that the hypothetical question was insufficient and that a deficient hypothetical question cannot serve as sufficient evidence, requiring remand). *Hall*, distinguished *Edwards*, finding that the representative jobs in *Hall* were not equivalent to the fast-paced factory work in *Edwards*. *Hall*, 2018 WL 3524467, at *5. The *Hall* court therefore found that, unlike the ALJ in *Edwards*, the *Hall* ALJ fully accounted for Plaintiff's moderate limitations in concentration, persistence or pace when he "included additional restrictions beyond limiting Plaintiff to 'simple, routine' work, and also limited Plaintiff to only 'occasional changes' in the workplace and 'occasional interaction' with the public, co-workers and supervisors." *Id*.

Here, unlike *Edwards* where the ALJ and the consultative physician found moderate limitations in the claimant's ability to concentrate, persist, and maintain pace, none of the medical opinions found that Plaintiff had moderate limitations in her ability to concentrate, persist, and maintain pace. (R. at 75–76 (finding mild limitation in this area), 87–88 (same), 102–103 (same), 115–16 (same), 478–83.) At best, Dr. Thornton opined only that Plaintiff "*may have some difficulties maintaining persistence at work because of her worrying*" and "*may feel easily overwhelmed and have difficulty coping with the everyday stressors in a work environment.*" (R. at 482 (emphasis added).)[3] Even assuming the ALJ's limitation to simple, routine tasks did not specifically address persistence or stress, the ALJ did not err in failing to include Dr. Thornton's equivocal opinion evidence that did not provide a specific functional limitation. *See Albrecht v. Comm'r of Soc. Sec.*, No. 1:14-cv-2116, 2015 WL 4985475, at *6 (N.D. Ohio Aug. 18, 2015) ("Dr. Dallara's opinion that Albrecht *may* have 'some difficulties'

---

[3] The Court addresses Dr. Thornton's opinion in more detail below.

relating to others or *may* have 'some difficulties' withstanding the stress/pressure associated with day-to-day work hardly compels the inclusion of the limitations Albrecht suggests" and Dr. Dallara "only opines that Albrecht *may* have problems in the identified areas, a rather cautious statement that suggests there is also a significant chance that no problems will arise" and "the statement that Albrecht might have 'some difficulties' fails to express an opinion as to the severity of those difficulties in the event they materialize") (emphasis in original); *cf. Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018) (finding that the ALJ relied upon substantial evidence where, *inter alia*, the ALJ gave little weight to an opinion that he noted was "'quite vague, as she did not actually propose any specific functional limitations that would preclude the claimant from returning to 'productive employment'"); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (stating that it is "well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact" into a hypothetical question). Notably, an ALJ must include only those limitations that impact a Plaintiff's ability to work. *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) (explaining that the RFC describes a claimant's "residual abilities or what a claimant can do, not what maladies a claimant suffers from" and that "a claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other") (internal quotation marks and citations omitted); *cf. Simpson v. Comm'r of Soc. Sec.*, No. 1:13-cv-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014) ("Thus, an individual can have a severe impairment, *i.e.*, one that more than minimally affects work ability, and still retain the RFC to do a wide variety of work. Put another way, the existence of a severe impairment says nothing as to its limiting effects."). Here, the ALJ did not find, and the medical evidence did not reflect, any particular speed and pace limitations. Based

on this record, the ALJ's limitation of to "simple, routine tasks, with no more than occasional interaction with the public and occasional changes in the workplace" with being off task 8% of the time (R. at 21) sufficiently accounts for Plaintiff's mental impairments. *See Hall*, 2018 WL 3524467, at *5.

## 2. Interpretation of raw medical data

Plaintiff's next argument relies on the ALJ's decision to accord "little weight" to the state agency psychological consultants and "some weight" to Dr. Thornton. (ECF No. 13 at 14; ECF No. 17 at 1–4.) In addressing the state agency consultants, the ALJ explained that "[l]ittle weight is given to the opinions of the State agency psychological consultants (Exhibit lA; 2A; 5 A; 6A), as evidence received at the hearing, including the claimant's counseling and psychiatric records (Exhibit 11F), suggests severe mental impairments." (R. at 25.) In assigning "some weight" to Dr. Thornton's opinion, the ALJ found as follows:

> At the request of the State agency, the claimant underwent a psychological consultative examination with Lisa Thornton, Ph.D. (Exhibit 4F) in May 2015. The claimant reported she was not receiving any mental health treatment and had never been in counseling or hospitalized for mental illness, and had never been medicated for mental illness. Upon examination, the claimant was noted to appropriately dressed and groomed with unremarkable eye contact. She was alert and attentive and cooperative throughout the evaluation. Her speech was normal. Her affect was anxious, but stable. There was no indication of auditory or visual hallucinations. The claimant was oriented x4. The claimant was able to understand and follow instructions. Some weight is given to the opinions of Dr. Thornton (Exhibit 4F/6). Dr. Thornton's findings are well supported by his [sic] exam findings, however, he [sic] did not opine to specific limitations in vocationally relevant terms. Therefore, only some weight is given.

(R. at 24.) Because the ALJ gave only "little weight" to the state agency psychological consultants and "some weight" to Dr. Thornton, Plaintiff argues that the ALJ "did not have professional guidance" and interpreted "raw medical data" when formulating the RFC. (ECF No. 13 at 14; ECF No. 17 at 1–4.)

This Court disagrees. As an initial matter, the ALJ considered medical professionals' findings when formulating the mental RFC determination, including treatment notes reflecting Plaintiff's alert and attentive behavior (R. at 21, 24, 479); engaged demeanor (*see, e.g.* R. at 20, 24, 686, 688, 690, 692, 694, 696, 698, 702, 705, 707, 709, 711, 713, 716, 718, 720, 722, 724, 726, 731, 733, 735, 737, 739, 741, 743, 746, 749, 751, 753, 755); and intact ability to understand and follow instructions (R. at 21–22, 24, 482). Moreover, the Court is not persuaded that the ALJ impermissibly interpreted "raw medical data" even if he considered Dr. Thornton's vague opinion when formulating the RFC (R. at 21, 24). Dr. Thornton's opinion simply does not equate to the "raw medical data" of two-years' worth of medical records that post-dated the only medical opinion in the record of Plaintiff's cited case. (ECF No. 17 at 2–4 (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008).) *Deskin* is therefore inapposite. Here, the ALJ appropriately considered Dr. Thornton's opinion in reaching the RFC determination and explained why he gave it only "some weight." (R. at 24.) *Cf. Quisenberry*, 757 F. App'x at 431. Notably, "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "'[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Shephard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) (quoting *Rudd*, 531 F. App'x at 728); *see also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a

physician offers an opinion consistent with that of the ALJ.") (citing *Shepard*, 705 F. App'x at 442–43; *Rudd*, 531 F. App'x at 728). For these reasons, the ALJ did not impermissibly interpret raw medical data when formulating the RFC.

### 3. Conservative mental health treatment

Plaintiff also criticizes the ALJ's consideration of her conservative treatment in which he reasoned as follows: "The claimant's mental health treatment has similarly been conservative, consisting of counseling and medication management, with no indication of any recommendations for more aggressive treatment such as inpatient psychiatric care. Notably, at the time of her consultative examination, the claimant had not sought any mental health treatment whatsoever." (R. at 24–25.) Plaintiff's argument is not well taken. The ALJ reasonably considered that Plaintiff required and received only conservative treatment. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (providing that the adjudicator, in evaluating credibility, must consider, *inter alia*, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same); *Rudd*, 531 F. App'x, at 727 (finding that minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period."); *cf. Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment). Accordingly, the ALJ did not err when considering Plaintiff's conservative mental health treatment.

### 4.    Consideration of panic attacks

Plaintiff further complains that the ALJ relied on evidence that Plaintiff's reported panic attacks apparently related to acute stressors rather than everyday activities and that she admitted that she was able to go to the store despite her panic attacks and aversion to crowds. (ECF No. 13 at 15–16.) Addressing these matters, the ALJ specifically found as follows:

> Turning to the claimant's mental impairments, the objective findings are not entirely consistent with the level of severity testified to by the claimant. A November 2014 mental health screening indicated only mild depression, and it was proposed the claimant monitor her symptoms (Exhibit 12F/39). In 2015 the claimant sought counseling and mental health treatment with complaints of anxiety. However, treatment records suggest the claimant's anxiety was in response to specific instances in the claimant's life. For example the claimant reported anxiety as the result of her father having a brain tumor (Exhibit 11F/145), the suicide of a friend (Exhibit 11F/142), getting into a motor vehicle accident and being robbed (Exhibit 11F/139), her daughter jumping out of a second story window (Exhibit 11F/137), and her neighbor threatening her (Exhibit 11F/90). The claimant's treatment has consisted of counseling, community psychiatric supportive treatment, and medications (Exhibit 11F). The claimant was scheduled to follow up approximately every 2-3 months for psychiatric care (Exhibit 11F). Treatment records repeatedly indicate the claimant was open and receptive to intervention, and demonstrated insight and understanding, and was engaged with appropriate expression (Exhibit 11F/101, 104, 130, 150). The claimant's more recent treatment records note the claimant was satisfied with her recent medication changes, and she did not report significant changes in her conditions since her last visit (Exhibit 11F/86). As of June 12, 2017 the claimant was noted to be bright, appropriate, cooperative, pleasant and talkative (Exhibit 11F/163).

(R. at 23–24.)

> The undersigned has also considered the claimant's daily activities. The claimant testified she is able to go to the store, despite her reports of panic attacks and not wanting to be in crowds. She testified she performs chores such as laundry, vacuuming, and dusting. The claimant visits her mom frequently and both walks and drives to visit friends. She reported she is able to cook, do her own errands, and keep her own schedule (Exhibit 4F). These types of activities are commensurate with the residual functional capacity above.

(R. at 25.)

In response to this analysis, Plaintiff insists that certain evidence in the record supports "a wider issue" of anxiety beyond reactions to periodic stressors and that other evidence undermines the ALJ's finding of a contradiction between her panic attacks and crowd aversion and her ability to go to stores and driving. (R. at 15–16.) However, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). For these reasons, the Court finds that the ALJ did not err in his consideration of Plaintiff's panic attacks.

**5.      Step five finding**

Plaintiff also criticizes the three jobs identified by the VE, arguing that insufficient opinion evidence and insufficiently-analyzed non-opinion evidence undermines the available jobs identified at step five of the sequential process. (ECF No. 13 at 16–17; ECF No. 17 at 4.)

The VE testified that a hypothetical person of Plaintiff's age, education, and work experience, with the ALJ's assessed RFC, could perform work as an inspector (DOT No. 669.687-014), patcher (DOT No. 723.687-010), and assembler (DOT No. 713.687-018). (R. at 27, 63.) Plaintiff, however, contends that these jobs are more like the factory-nature jobs in *Edwards*, 383 F. Supp. 2d 920, where a limitation to simple, repetitive tasks was insufficient to determine if Plaintiff was capable of meeting quotas or other aspects related to moderate concentration limitation. (ECF No. 13 at 16.) Plaintiff goes on to argue that the inspector job requires making generalizations, evaluations, or decisions based on sensory or judgmental criteria and that there is evidence in the record reflecting that Plaintiff was indecisive, lacked insight, and had difficulty applying coping skills. (*Id*. at 17.) Plaintiff therefore contends that

the deficient RFC "calls into question the jobs found available at Step Five, which require work according to set procedures, sequence, or pace." (*Id.*)

Plaintiff's arguments are not well taken. As a preliminary matter, for the reasons previously discussed, the ALJ's RFC was supported by substantial evidence and contrary evidence in the record supporting the opposite conclusion does not warrant remand. *See Blakely*, 581 F.3d at 406. Notably, the ALJ reasonably relied on the VE's testimony that was responsive to a hypothetical question that reflected his RFC determination that was supported by substantial evidence. *See Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *10 (N.D. Ohio June 8, 2017) ("Testimony from a vocational expert—in response to a hypothetical question— may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments.") (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005)), *adopted by* 2017 WL 2720332 (N.D. Ohio June 23, 2017).

Similarly, to the extent that Plaintiff relies on the ALJ's step three finding that Plaintiff had moderate difficulties in this area in arguing that additional restrictions should have been incorporated in the RFC and conveyed to the VE (ECF No. 13 at 10, 16–17; ECF No. 17 at 4–5), this argument is not well taken. The ALJ specifically stated that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (R. at 21.) The ALJ went on to note that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (*Id.*) "When an ALJ specifically differentiates between the two findings and does not incorporate those limitations into his residual functional capacity determination," the ALJ is not required to

relay a step three finding of moderate impairment in concentration, persistence, or pace to the VE. *See Dotson v. Comm'r of Soc. Sec.*, No. 2:13-CV-1065, 2014 WL 6909437, at *6 (S.D. Ohio Dec. 8, 2014) (stating that the assessment of "B" criteria is not a residual functional capacity assessment); *see also Shinlever v. Berryhill,* No. 3:15-cv-371-CCS, 2017 WL 2937607, at *4–6 (E.D. Tenn. July 10, 2017) (reviewing case law in this circuit and concluding that "the Court finds none of Plaintiff's cited authority requires an ALJ's RFC determination to mimic the specific 'paragraph B' findings assessed at Step 3," and finding that the appropriate inquiry is whether the RFC determination is supported by substantial evidence); *Flinn v. Comm'r of Soc. Sec.*, No. 2:15-CV-2666, 2016 WL 2765780, at *5 (S.D. Ohio May 13, 2016) ("[T]he key question is not whether an ALJ found difficulties in concentration, persistence, and pace at step three, but whether the RFC determination has substantial support in the record") (internal quotations omitted); *Koster v. Colvin*, No. 1:13cv2719, 2015 WL 413795, at *5 (N.D. Ohio Jan. 30, 2015) ("The Social Security Administration has long distinguished between findings of limitations under the Paragraph B criteria and those included in an RFC assessment. '[L]imitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" (quoting SSR 96-8P, at *4 (S.S.A. July 2, 1996 )); *North v. Colvin*, No. 2:14-CV-0052, 2015 WL 1476555, at *3–4 (S.D. Ohio Mar. 31, 2015) (finding that an RFC limiting plaintiff to "simple to moderately complex but routine and predictable" tasks with "no more than superficial interactions with others" adequately addressed the moderate limitation in concentration, persistence, or pace found by the ALJ at step three).  While Plaintiff insists in reply that the RFC should be more detailed than the paragraph B findings, she relies on out-of-circuit cases that are not binding on this Court.  (*See* ECF No. 17at 4–5.)

For all these reasons, Plaintiff's first contention of error is not well taken.

**B.      Evaluation of Spinal Impairment**

Plaintiff also argues that the ALJ failed to adequately evaluate her spinal impairment, resulting in an RFC that was unsupported by substantial evidence.  (ECF No. 13 at 17–20; ECF No. 17.)

In reaching his physical RFC determination, the ALJ reasoned as follows:

The claimant reports neck and back pain and the records document both cervical and lumbar degenerative disc disease.  A November 2014 MRI of the lumbar spine revealed at L5-Sl a broad based disc extrusion with mild inferior migration and mild to moderate right and moderate left foraminal stenosis; a broad based left foraminal disc protrusion with mild left neural foraminal stenosis at L3-L4; and a moderate disc degeneration at L5-Sl with disc space narrowing and mild adjacent Modic type 1 endplate edema (Exhibit 2F/50). However, upon examination the claimant remained neurologically intact, with full range of motion of all extremities (Exhibit lF/12; 2F/21). In 2015, the claimant additionally presented complaining of neck pain with right arm numbness and tingling.  An MRI of the cervical spine revealed severe degenerative changes at C4-C5 and C5-C6 resulting in moderate central spinal stenosis, without cord compression, and severe right and mild left foraminal stenosis with contact/compression of the right CS and C6 nerve roots (Exhibit 2F/48). It further revealed moderate C3-C4 degenerative changes resulting in mild central canal stenosis and moderate right foraminal stenosis. The claimant reported right arm numbness and tingling, however, a nerve conduction study revealed chronic (healed) C6 radiculopathy with no indications of acute cervical radiculopathy and no signs of entrapment neuropathy or generalized peripheral neuropathy (Exhibit 7F/8).  The claimant's treatment consists almost entirely of pain management treatment, primarily with opiate pain medications. Pain management records throughout 2016 and 2017 indicate little change in the claimant's condition and continued treatment with oxycodone (Exhibit 7F; 9F). The claimant's most recent records indicate she sought physical therapy just a month prior to the hearing.  However, she testified she only made 3 visits, as she felt it worsened her pain. Treatment records do not evidence more invasive treatment such as surgical intervention, and the records do not document specific recommendations for spinal surgery.

The record also documents knee pain. However, the claimant's treatment has consisted solely of injections and prescription pain medication with pain management (Exhibit 9F).  A November 2016 x-ray of the knees revealed no evidence of fracture or dislocation, and no soft tissue swelling or abnormal calcification.

At the request of the State agency, the claimant underwent a consultative examination with Robert Whitehead, MD on June 25, 2015 (Exhibit 6F). The claimant presented with complaints of neck pain radiating into her right arm and low back pain. Upon examination, the claimant exhibited a slow but nonantalgic and stable gait. Examination of the cervical and lumbar spine both showed decreased range of motion and tenderness. However deep tendon reflexes were symmetric. She exhibited some decreased sensation and decreased triceps strength in the right arm, however, lower sensation and strength were maintained in the lower extremities. There was no evidence of muscle spasm or atrophy. She further exhibited normal range of motion in all extremities.

While there is objective medical evidence supporting the claimant's spinal impairments, her treatment has remained relatively conservative, consisting of medication and more recently physical therapy. Therefore, the undersigned reasonably finds the claimant is limited to a reduced range of sedentary work with additional postural limitations. In light of the claimant's reported right extremity numbness and tingling, the undersigned further limits the claimant occasional pushing and pulling and no overhead reaching with the right upper extremity. This reduced range of sedentary is further consistent with the limited objective findings in support of the claimant's alleged knee pain.

(R. at 22–23.)

As for the opinion evidence, little weight is given to the opinion of Dr. Whitehead that the claimant would have difficulty retaining remunerative employment, as this is an issue reserved to the commissioner (Exhibit 6F). Dr. Whitehead further provided no specific functional limitations.

The undersigned gives some weight to the opinions of the State agency medical consultants, to the extent they opine the claimant has postural limitations, and further is limited to no exposure to hazards and can occasionally reach overhead with the right upper extremity (Exhibit 1 A; 2A; 5A; 6A). This is consistent with the claimant's documented lumbar and cervical spinal pain radiating into the right upper extremity (Exhibit 6F). However, the undersigned finds the claimant's cervical and lumbar spine impairments, combined with her knee osteoarthritis warrant greater limitations, specifically to the sedentary exertional level.

(R. at 25.)

Here, substantial evidence supports the ALJ's physical RFC determination. As set forth above, the ALJ reasonably considered medical evidence reflecting, *inter alia*, a stable and non-antalgic gait, full arm and leg range of motion, symmetric deep tendon reflexes, intact leg sensation and strength, no evidence of muscle spasm or atrophy, and that a nerve conduction

study revealed no indications of acute cervical radiculopathy and no signs of entrapment neuropathy or generalized peripheral neuropathy (R. at 22–23, 25) when explaining how he determined the physical limitations in the RFC. *See Smith v. Comm'r of Soc. Sec.*, No. 1:14-cv-304, 2015 WL 2238150, at *8 (S.D. Ohio May 12, 2015) (finding that substantial evidence supported RFC where the record reflected, *inter alia*, "'unremarkable objective findings,' such as a 'normal' cervical spine, with 'an almost complete recovery from prior [spine] surgery, that she could heel and toe walk, that she walked with a normal gait, that she had normal hips, ankles, and feet, and that she exhibited no muscle atrophy[,]'" intact sensory function and other "normal" or "mild" clinical findings).

As previously discussed, it was also reasonable for the ALJ to consider Plaintiff's conservative treatment, consisting primarily of pain management. *See* SSR 16-3p, 2017 WL 5180304; 20 C.F.R. § 404.1529(c)(3); *Rudd*, 531 F. App'x, at 727; *Despins*, 257 F. App'x at 931; *cf. Lester*, 596 F. App'x at 389. To the extent that Plaintiff suggests that surgery was recommended, she nevertheless acknowledges that "the record does not contain clear evidence thereof," and instead relies on her own lay testimony and speculation for this assertion. (ECF No. 19–20.) The ALJ therefore did not err in considering that there was no documentation to support the claim that spinal surgery was recommended. (R. at 23.)

Plaintiff goes on to complain that the ALJ afforded "little weight" to the opinion of Dr. Whitehead and "some weight" to the opinion of the state agency medical consultants, resulting in the ALJ crafting "an RFC assessment without sufficient guidance." (ECF No. 13 at 17–19.) The Court disagrees. As a preliminary matter, the Court notes that the ALJ appropriately assigned "little weight" specifically to Dr. Whitehead's opinion that Plaintiff would have difficulty retaining remunerative employment (R. at 25) because whether Plaintiff is disabled is a

determination specifically reserved to the Commissioner. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that the ALJ properly rejected a treating source's opinion that the claimant was disabled because such a determination was reserved to the Commissioner); *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *7 (N.D. Ohio Feb. 21, 2019) (finding that because "the issue of disability is a legal, not a medical issue" and reserved to the Commissioner, "opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference") (citations omitted). In addition, while Plaintiff apparently complains that the ALJ accorded "little weight" to the state agency medical consultants, the ALJ actually assigned greater limitations than those found by these consultants and does not serve as a basis for remand in this case. *Cf. Ferris v. Comm'r of Soc. Sec.*, No. 5:16-cv-2459, 2017 WL 5187796, at *11 n.4 (N.D. Ohio Nov. 9, 2017) ("Because his RFC determination was more restrictive than the opinions expressed by non-examining state agency physicians, the ALJ's departure from their opinions was, at most, harmless error.") (citing *Shinseki*, 556 U.S. at 409); *Malone v. Comm'r of Soc. Sec.*, No. 1:16-cv-1084, 2017 WL 9485649, at *14 (N.D. Ohio May 4, 2017) ("Because the ALJ found that plaintiff's RFC was more restricted than had the state-agency reviewing physicians, his assignment of no weight to their opinions was harmless."), *adopted by* 2017 WL 2821449 (N.D. Ohio June 30, 2017).

To the extent that Plaintiff insists that other medical evidence, including physical therapy records, support a more restrictive RFC (ECF No. 13 at 19–20; ECF No. 17 at 4), this Court has already explained that where, as here, the ALJ's RFC was supported by substantial evidence, the existence of contrary evidence in the record supporting the opposite conclusion does not warrant remand. *See Blakely*, 581 F.3d at 406; *see also Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 600 (6th Cir. 2018) (affirming judgment denying benefits where "though the record includes

evidence that could support a different conclusion, we nevertheless conclude that the ALJ provided sufficient explanations, supported with facts from the record, for his [RFC] decision"); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (concluding that, where substantial evidence supported the RFC, "[t]hat there may be substantial evidence in the record to support another conclusion is irrelevant").

Finally, to the extent that Plaintiff contends that the ALJ failed to show that objective evidence warranted a limitation to only sedentary work and therefore improperly interpreted raw medical data (ECF No. 13 at 20; ECF No. 17 at 1–4), this argument is unavailing for the reasons previously discussed. The ALJ did not improperly interpret raw medical data and properly determined the RFC based on his evaluation of the medical evidence. *See Rudd*, 531 F. App'x at 728; *Shephard*, 705 F. App'x at 442 ("'[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" (quoting *Rudd*, 531 F. App'x at 728)); *Mokbel-Aljahmi*, 732 F. App'x at ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citations omitted). The ALJ did not impermissibly interpret raw medical data when formulating the physical RFC, which was supported by substantial evidence.

For all these reasons, Plaintiff's second contention of error is not well taken.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's

Statement of Errors is therefore **OVERRULED** and the Commissioner's decision is

**AFFIRMED**.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT**.

**IT IS SO ORDERED.**


Date:  September 24, 2019                    *s/ Elizabeth A. Preston Deavers*
                                            ELIZABETH A. PRESTON DEAVERS
                                            CHIEF UNITED STATES MAGISTRATE JUDGE